UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

PAMELA BROWN                               CIVIL ACTION NO. 06-1984

VERSUS                                     JUDGE S. MAURICE HICKS, JR

CENTURYTEL INC.                            MAGISTRATE JUDGE HORNSBY

MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by the Defendant, CenturyTel Inc. ("CenturyTel"). [Doc. No. 42]. Plaintiff, Pamela Brown ("Brown") sued CenturyTel for alleged race-based discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. Defendant moves for summary judgment dismissing all of plaintiff's claims. Plaintiff opposes the motion. For the reasons which follow, the Court finds that there are no genuine issues as to any fact material to the motion, and CenturyTel is entitled to judgment as a matter of law.

Also pending are plaintiff's Motion to Strike portions of defendant's affidavits [Doc. No. 53] and defendant's Motion to Strike portions of plaintiff's affidavit [Doc. No. 60]. Because the Court did not rely on the disputed portions of the affidavits in reaching its ruling, the motions are denied as moot.

BACKGROUND

I.   **Plaintiff's Employment.**

Defendant CenturyTel is the Louisiana subsidiary of CenturyTel, Inc., a communications company whose business consists primarily of providing local exchange, wireless, long distance, Internet and security monitoring services. Plaintiff Brown was hired in July 2001 as a Temporary Adjustor I in the Shreveport Call Center. Plaintiff's primary

job was to collect money from customers who were behind in their payments. About one year after she was hired as a temporary employee, Plaintiff was made a regular employee of CenturyTel with her hire date retroactive to the start date of her temporary employment.

Plaintiff worked as an Adjustor I in Financial Services during all of her employment. For the majority of that time, she took incoming calls from CenturyTel customers who were behind in their payments and were in danger of having their service disconnected or had already had their service disconnected.

Plaintiff acknowledges receiving a copy of the CenturyTel Employee Handbook and the Customer Mistreat Policy. The "overview" section of the policy describes the expectations CenturyTel has for all customer service employees:

> CenturyTel's ultimate objective is to give the best possible service to our internal and external customers. As a Customer Service employee you are expected to conduct yourself in a manner above reproach when carrying out your duties and responsibilities at work. Teamwork and cooperation among employees as well as between employees and the Company are essential to top efficiency and productivity, benefiting everyone and helping to attain our objectives. The Customer Mistreat policy includes the definition and examples of a customer mistreat, along with the possible reprimands and corrective actions associated with a mistreat.

[Id., Ex. 7].

The policy further makes clear in the Definition of Customer Mistreat Section that a "[c]ustomer mistreat is to wrongly treat or abuse an internal or external customer." An "internal customer" is another company employee. The policy also provides examples of customer mistreats for which an employee "should expect to be disciplined, up to and including termination…" [Id.] The offenses listed include:

- Acting rudely to a customer
- Using profanity with a customer
- Raising your voice or yelling at a customer

- Hanging up on a customer
- Transferring a customer back into the Customer Service queue
- Placing a customer on hold

\* \* \* \* \*

- Placing the phone on mute or leaving the customer to experience dead air. This is completely unacceptable.
- Misusing a customer's account information, using Instant Message, reading emails and surfing the Internet while on a call with a customer.
- Failure to follow the escalation policy.
- Any other occurrence of wrongly treating or abusing an internal or external customer.

[Id.].

## II. Written Warning on April 19, 2005 and Loss of Quarterly Bonus.

Plaintiff was issued a written warning on April 19, 2005 for alleged customer mistreats for being rude or for using an inappropriate tone of voice on the telephone. [Doc. No. 44 at 2]. Plaintiff claims she was falsely accused. The written warning was based on a total of nine alleged customer mistreats: six from complaints received from customers and three observed in recorded calls. [Id., Ex. 14 at CT-0425]. Of the six complaints received, three were from external customers and three were from "internal customers" or another company employee.[1] Plaintiff denies she was rude to any of the callers who complained. The written warning also stated that plaintiff would not be eligible for the quarterly bonus.

Plaintiff wrote to the Equal Employment Opportunity Commission on June 6, 2005, contending that this discipline constituted race-based discrimination.

---

[1]Although plaintiff claims that the "internal" complaints were made by white co-workers [see Doc. No. 44 at 14], of the four she cites, only two were "internal" and one of those two was recorded.

**III.    Complaints without Consequence.**

Jennifer Maxie was plaintiff's supervisor from October 2005 until April 2006. Maxie is black. According to Maxie's affidavit, she received at least four customer complaints of alleged mistreats by plaintiff in October and November of 2005.[2] [Doc. No. 42, Ex. 37 at ¶¶ 6-8]. Based on the complaints she received, Maxie recommended that plaintiff's employment be terminated. [Id.] Despite Maxie's recommendation, not only was plaintiff not terminated, she was not even disciplined. The defendant claims that it was due to its sensitivity to discrimination/retaliation issues and related concerns that plaintiff was not disciplined or terminated during that time.

Plaintiff filed discrimination lawsuit on October 31, 2006.

**IV.    Final Warning on February 20, 2007 and Loss of Quarterly Bonus.**

Plaintiff received a "final warning" based on four additional complaints received between January 24, 2007 and February 13, 2007 concerning alleged customer mistreats. [Doc. No. 44, Ex. 17]. Basically all of the complaints were that plaintiff was rude. She was warned that any further performance problems would result in disciplinary action up to and including termination. However, plaintiff denies ever having mishandled a call during the entire time she worked for the defendant.

**V.    Plaintiff Attends Customer Service Training.**

Just prior to plaintiff receiving her final warning, she attended customer soft skills training on February 13, 2007. [Id., Ex. 18]. The training was designed to assist customer service representatives by providing additional training on the proper way to interact with customers. [Id., Ex. 19]. Among other things, the training addressed interpersonal skills,

---

[2]One customer claimed that the plaintiff told her she was "asinine."

behaviors, dealing with unhappy customers, the impact of employees and extraordinary customer relations. [Id.]

## VI. Termination on March 14, 2007

Plaintiff's employment was terminated on March 14, 2007 after two additional complaints were received on March 13, 2007 concerning alleged customer mistreats. One customer stated that plaintiff was so rude that she had no business dealing with customers. The other customer claimed that plaintiff called her a "stupid bitch." Plaintiff claims that the customer complaints were "embellished" by the supervisor who spoke with the customers, although she offers no competent summary judgment evidence to support her accusation. [Doc. No. 44 at 6]. Again, she denies ever being rude to anyone.

Plaintiff is now suing her former employer, alleging that she was discriminated against in violation of Title VII because she was singled out for "special adverse treatment" relative to the alleged customer mistreats.

## LAW AND ANALYSIS

### I. Summary Judgment Standard.

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); see also,

Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also, S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When the nonmovant has the burden of proof at trial, he "must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." Stults v. Conoco, Inc.,

76 F.3d 651, 656 (5th Cir. 1996). If the nonmovant can not meet this burden, then "the motion for summary judgment must be granted." Id., Little, 37 F.3d at 1076.

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.

## II.  Employment Discrimination.

The Fifth Circuit applies a modified McDonnell Douglas burden-shifting framework to analyze termination claims. First, Brown must make a prima facie, which requires her to show (1) she was a member of a protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) she was replaced by an employee who is not in the protected class, or, in cases of employment discipline, that others similarly situated were more favorably treated. The *prima facie* case, once established, raises an inference of intentional discrimination and the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Id. Once done, "the plaintiff must then offer sufficient evidence to create a genuine issue of material face 'either (1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive analysis).'" Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

### A. Prima Facie *Claim.*

In order to establish a *prima facie* claim, Brown must show that a similarly-situated white employee was treated more favorably that she was treated. The Fifth Circuit has held that in order for a plaintiff to show disparate treatment, she must demonstrate that the misconduct for which she was disciplined was ***nearly identical*** to the misconduct engaged in by a white employee. Wallace v. Methodist Hospital System, 271 F.3d 212 (5th Cir. 2001)(citations omitted; emphasis added); Smith v. Wal-Mart Stores, 891 F.2d 1177 (5th Cir. 1990)("When a supervisor of one race treats employees of the same race more favorably than similarly-situated employees of another race under circumstances that are ***essentially identical***, a presumption of discriminatory intent is raised." (emphasis added)). The conduct has to be so similar that the employer is obligated to treat the two individuals equally. See Davin v. Delta Air Lines, Inc., 6785 F.2d 567, 570 (5th Cir. Unit B 1982).

Plaintiff initially complains that white co-worker Brandi White was treated more favorably because her conduct went "unpunished." [Doc. No. 44 at 4]. Plaintiff cites exhibit W-8 in support of her contention. That exhibit shows four complaints of customer mistreats by Brandi between December 2006 and April 2007. However, it also shows that Brandi received a written warning on April 11, 2007 and was deemed ineligible for her 2nd quarter bonus. [Id. at CT-1993]. Since Brandi received the ***same punishment*** that plaintiff did, but for even ***less complaints*** than plaintiff received, she was not treated more favorably than plaintiff. The exhibit shows only one more mistreat complaint on Brandi on July 10, 2007. Plaintiff received six more complaints after her written warning. Accordingly, plaintiff and Brandi were not "similarly-situated."

Plaintiff also argues that white adjustors in general were not investigated or treated as harshly as she was treated. Although she offers statistics to support her contention, she

offers no expert testimony to support her figures. Accordingly, her statistical information will not be accepted by the Court. However, the Court will examine the white employees to which plaintiff seeks to compare her treatment. Plaintiff claims the following white employees received the following discipline:

| | | | |
|---|---|---|---|
| W-1 | Stacie Pope | 11/15/06 | received a "written warning" and lost bonus based on recorded call with customer mistreat; one prior counseling |
| W-2 | Amanda Shepherd | 07/30/04 | received a "record of conversation" ("ROC") based on one customer complaint and one observed customer mistreat; only prior verbal counseling |
| W-3 | Brandi Smith | 4/11/07 | received a "written warning" and lost bonus based on observed customer mistreat; two prior verbal counselings |
| W-4 | Kim Smith | 3/27/06 | received an ROC for recorded customer mistreat; no prior counselings *(\*note\* according to defendant, this employee is black; see Doc. No. 52 at 4)* |
| W-5 | Wendy Whitehead | 5/25/05 | received an ROC for observed customer mistreat; no prior counselings; supervisor not listed |
| | | 8/11/05 | received a final warning and lost bonus based on "incoming call stats" which indicated customer mistreats |
| | | 10/6/05 | terminated based on monitored customer mistreat |
| W-7 | Lisa Harshfield | 11/16/06 | report of one observed customer mistreat; complaint from co-worker that she would lose her temper and bad-mouth team leader |
| | | 9/24/04 | one customer complaint of mistreat |

      W-9    April Arthur        4/29/05  one customer complaint of mistreat

                                        4/7/06  one customer complaint of mistreat[3]

These are the white employees to whom plaintiff seeks to compare herself. However, plaintiff received 15 complaints of customer mistreats: 9 which lead to her written warning, 4 which lead to her final warning, and 2 more which led to her termination. None of the white employees listed above received anywhere near that number of complaints.[4] Certainly an employer is not obligated to discipline an employee with 15 customer complaints the same as it disciplines an employee with only 3 customer complaints. Plaintiff has simply failed to demonstrate that any of these employees were similarly-situated to her. Since Brown has failed to submit any competent summary judgment evidence of a white employee under ***nearly identical circumstances*** who was treated more favorably, she has failed to state a *prima facie* claim of racial discrimination.

### B.   Legitimate, Non-discriminatory Reason.

The Court finds that Brown has failed to establish a *prima facie* claim of race discrimination. However, even if Brown could establish a *prima facie* claim, summary judgment would still be proper as she has failed to submit any competent summary judgment evidence that the legitimate, non-discriminatory reasons offered by the defendant were false, or were a pretext for illegal discrimination.

The defendant offered evidence that it disciplined and eventually terminated plaintiff based on the mistreatment complaints it received from customers. Brown has failed to

---

[3] Although plaintiff states that April Arthur had three complaints, the April 6 and April 12 memos concern the same alleged mistreat. Accordingly, she only had two complaints.

[4] Indeed, one white employee (Wendy Whitehead) was terminated for far fewer customer complaints than plaintiff received.

present any competent summary judgment evidence to show that this stated reason was false or that the real reason was her race. Although plaintiff contends that the defendant "twisted information to conjure false allegations of customer mistreats" by her [Doc. No. 44 at 3], she has no evidence to support her subjective belief. She also complains that she was subjected to "excessive scrutiny" because her calls were recorded on a non-random basis in an attempt to find a customer mistreat. [Id. at 9]. However, the overwhelming majority of the alleged customer mistreats did not come from recorded calls, but rather were received directly from customers who called to complain.

Plaintiff claims that she was "falsely accused" of customer mistreatment, but offers no competent summary judgment evidence that complaints were not actually received from customers. She merely disagrees that she was rude. However, even if the complaints made against plaintiff were without merit, she cannot show that the defendant was not in good faith in believing the customers who called to complain about her. Indeed, given the number of complaints received about plaintiff compared to the number of complaints received about other employees, plaintiff would be hard pressed to show that her employer was not justified in believing that plaintiff was indeed rude to these customers.

### III.    Retaliation.

To establish a *prima facie* case of unlawful retaliation under Title VII, plaintiff must show (1) that she engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a casual link existed between the protected activity and the adverse employment action. Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir.1996)(*citing* McMillan v. Rust College, Inc., 710 F.2d 1112, 1116 (5th Cir.1983)).

"Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case

of retaliation." Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir.1997). "However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." Id.

Here, plaintiff engaged in protected activity when she filed her EEOC charge in June of 2005 and when she filed her lawsuit in October of 2006. The employment actions of which plaintiff complains are her written warning and loss of quarterly bonus (which occurred before she engaged in any protected activity) and her termination in March of 2007.

There was almost five months between the filing of plaintiff's lawsuit and her termination. The Court is not convinced that this temporal proximity is enough to establish the causal connection required for plaintiff's *prima facie* case. However, the Court need not decide that issue. As shown above in the context of plaintiff's racial discrimination claim, plaintiff has failed to submit any competent summary judgment evidence to call into dispute the legitimate, non-retaliatory reasons offered by the defendant: the numerous complaints from customers of alleged mistreatment. Accordingly, the Court finds that summary judgment on plaintiff's retaliation claim is proper as a matter of fact and law.

## IV.   Racial Harassment.

Plaintiff claims she was subjected to the following racial harassment:

(1)   she was falsely accused of customer mistreatment;

(2)   she was subjected to unusual scrutiny including the invasion of her privacy by recording of her conversations in a non-random fashion;  and

(3)   she was denied a meaningful opportunity to defend herself against the allegations of customer mistreat and thereby presumed guilty.

[Doc. No. 44 at 23]. In order to establish a hostile environment claim, Brown must show that:

> 1) she belongs to a protected class; 2) she was subjected to unwelcome racial harassment; 3) the harassment was based on her race; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.

Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005).

### A.  *Based on Race.*

In order to succeed on a racial harassment claim, plaintiff must first prove that the conduct of which she complains was based on her race. The Court has already found that plaintiff failed to establish that the discipline she received for alleged customer mistreats was not based on her race. Accordingly, the "false accusations" from customers of which plaintiff complains cannot support a claim of a racially hostile work environment.

Plaintiff also claims that her calls were recorded on a non-random basis, while white employees were not recorded in such a manner. However, Angie Isher testified that she has recorded both black and white employees, at the direction of Dawn Love, following reports of customer mistreats. [Doc. No. 52, Ex. 42].[5] Plaintiff has offered no competent summary judgment evidence to the contrary beyond her own subjective belief that white employees were not recorded. The fact that there was no written policy on non-random recording does not call in to question Isher's testimony that she did, in fact, record both

---

[5]Plaintiff's Motion to Strike complains that Isher did not state which employees she recorded in a non-random fashion. However, her failure to do so does not create a genuine issue of fact as to her sworn affidavit testimony. Likewise, there is nothing in exhibits W-1 through W-9 which contradicts Isher's testimony.

white and black employees. Accordingly, plaintiff cannot show that the recording of her calls was based on race.

Further, although plaintiff claims that white employees were allowed to listen to their conversations which were recorded, she cites no competent summary judgment evidence to support this allegation. [Doc. No. 44 at 23].[6] As such, she has failed to establish that white employees were treated more favorably or that her employer withheld the tapes from her based on her race. Accordingly, plaintiff fails to state a claim for a hostile work environment.

### B. *Severe and Pervasive.*

The Court finds that plaintiff has failed to establish that the conduct of which she complains was based on her race. However, even if plaintiff could establish it was racially motivated, Brown must also show that the conduct was severe or pervasive. The alleged

---

[6]However, plaintiff has failed to refer to any competent summary judgment evidence contained in the record to support her allegations. As the Fifth Circuit noted in Malacara v. Garber, 353 F.3d 393 (5th Cir. 2003):

> When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. See Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir.1998); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 916 (5th Cir.1992), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas, 136 F.3d at 458; Stults, 76 F.3d at 657; Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir.1994), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994); Skotak, 953 F.2d at 916 n. 7; see also Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300, 1307 (5th Cir.1988) (it is not necessary "that the entire record in the case ... be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"); *cf.* U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Id. at 405.

discrimination must have "created an environment that a reasonable person would find hostile or abusive." Id. Courts determine hostile environment claims considering the totality of the circumstances. Factors to consider include: "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Id.; see Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

In order to meet her burden, Brown must show more than a few isolated incidents of race based harassment. See Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir.1986). Instead, there must be a steady barrage of discriminatory comments. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). A hostile work environment can only be found when the workplace is "permeated" by the offensive conduct. Id. Furthermore, Brown's own subjective beliefs, however genuine, cannot form the basis of judicial relief. Nichols v. Lewis Grocer, 138 F.3d 563 (5th Cir. 1998); Little v. Republic Refining Co., 924 F.2d 93, 95 (5th Cir. 1991).

The Court finds that plaintiff has failed to establish that the conduct of which she complains was based on her race. Further, the Court finds that it was neither severe nor pervasive, and therefore did not rise to the level of an actionable hostile environment. Accordingly, summary judgment is proper as a matter of fact and law.[7]

---

[7]Since the Court finds that plaintiff has failed to state a claim for a hostile work environment, the Court need not address the applicability of the *Faragher/Ellerth* affirmative defense. See Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257 (1998).

**CONCLUSION**

The Court finds that Brown has not provided sufficient evidence to survive summary judgment. There are no genuine issues as to any material fact. Summary judgment in favor of the defendant, dismissing plaintiff's claims, is proper as a matter of fact and law.

Therefore:

**IT IS ORDERED** that the Motion for Summary Judgment filed by the defendant [Doc. No. 42] is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Motions to Strike [Doc. Nos. 53 and 60] are hereby **DENIED AS MOOT**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 2nd day of July, 2008.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE